[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-13328
Non-Argument Calendar

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 14, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00026-CV-CWH-5

EMBERY J. MCBRIDE,

Plaintiff-Appellant,

versus

WILLIE C. RIVERS, Sergeant, Macon State Prison,
OFFICER DEMONDO, CERT Team, Macon State Prison,
OFFICER JERKINS, CERT Team, Macon State Prison,
OFFICER SNIPES, Macon State Prison,
OFFICER FOX, CERT Team, Macon State Prison,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(March 14, 2006)

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Embery J. McBride, a Georgia state prisoner, appeals pro se the district court's grant of summary judgment, pursuant to Fed.R.Civ.P. 56(c), in his civil rights action, filed pursuant to 42 U.S.C. § 1983, in favor of the defendants, Sergeant Willie C. Rivers, Officer Domenico Demundo, Officer Robert Judkins, Officer Jeffery Snipes, and Officer Christopher Fox. McBride argues on appeal that the court (1) erred in concluding that no genuine issue of material fact existed as to any of McBride's claims, and (2) abused its discretion in ruling on McBride's discovery motions. For the reasons set forth more fully below, we affirm.

McBride asserted in his pro se § 1983 complaint that the defendants violated his Eighth Amendment rights while he was incarcerated in the Macon State Prison ("MSP"), in Macon, Georgia, by (1) not taking reasonable measures to protect him from another inmate, and (2) subjecting him to excessive force. McBride specifically alleged that, on March 6, 2003, while Defendants Rivers, Demundo, Judkins, and Fox were escorting him to the J-2 Building, Isolation/Segregation, for a disciplinary infraction, McBride asked them not to place him in a cell with anybody with whom he had problems. When McBride saw that the defendants were going to place him in a cell with Inmate Michael Holmes, McBride told them that he did not want to be placed in the same cell because he feared for his life.

2

McBride further asserted in his complaint that, despite this request, Defendants Fox, Demundo, Judkins, and Snipes forced McBride into the cell with Inmate Holmes, while Defendant Rivers watched. After McBride and Inmate Holmes started fighting and the defendants restrained McBride, the defendants punched McBride in the back of his head, on his back, and on his left side; kneed him four to six times on the left side of his face; or watched these acts without intervening. As a result, McBride suffered face contusions, knots behind his right ear and on his forehead, bruises to his back and left-rib side, a swollen right knee, and a sprained right ankle.[1]

After the defendants answered this complaint, McBride filed a motion to compel responses to some of his requests for the production of documents, including, among other things:

> Any and all writing, drawings, graphs, charts, photographs (including still frame) phono records and other data compilations from which information can be obtained or produced to plaintiff.

("Request No. 2"). Moreover, McBride sought to compel the production of:

---

[1] The district court subsequently granted McBride's unopposed motion to amend this complaint, whereby McBride added that Rivers was deliberately indifferent to his needs by (1) aiding others in forcing McBride into a cell with Inmate Holmes, and (2) failing to intervene to prevent the other defendants from using excessive force.

Any and all memorandums, complaints, or other court order

concerning the defendant use of excessive force within the past two

years to the present.

("Request No. 4").

The defendants responded that they objected to these discovery requests as

being either "vague and unduly burdensome," or "irrelevant to the present action

and not calculated to lead to discovery of admissible evidence." The defendants

further explained that (1) they could not respond to McBride's general request for

documents in Request No. 2, due to "the vast records which the Department of

Corrections maintains"; (2) any complaints described in Request No. 4, which

involved allegations that the defendants had used excessive force in the past, would

not establish the claims at issue in the instant case; (3) any court documents or

orders described in Request No. 4 were matters of public record and, thus,

otherwise accessible to McBride; and, (4) due to the defendants' system of

organizing and filing inmate grievances under the names and numbers of prisoners,

it would be unduly burdensome, if not impossible, to obtain a list of grievances and

complaints filed against an individual defendant by prison inmates.[2] The

---

[2] Further expanding on this last response, the defendants explained that, unless some action is taken by the Department of Corrections against a specific officer in response to a complaint, no record would be available regarding the complaint or grievance. Moreover, the defendants verified that they had no knowledge of any such actions being taken against any of

magistrate judge denied McBride's motion to compel, concluding that McBride's Requests Nos. 2 and 4 were overly broad and burdensome and would not lead to the discovery of admissible evidence.

After the magistrate issued this order, but apparently before McBride received a copy of it, McBride replied to the defendants' response to his motion to compel, arguing that, to the extent the defendants were contending that Request No. 2 was too vague, he subsequently had revised this request.[3] McBride also asserted that the evidence requested in Request No. 4 might be admissible to show intent, motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident, pursuant to Fed.R.Evid. 404(b). McBride explained that two of the defendants might have a history of using excessive force against prisoners, and that at least one officer might have been forced to resign because of his conduct. Furthermore, McBride argued that (1) copies of complaints should be

them regarding the claim of excessive use of force.

[3] McBride attached to his original motion to compel a revised Request No. 2, dated October 25, 2004, which included as follows:

> Any and all writings including but not limited to H-Building and J-Building Logbook based on plaintiff disciplinary reports given to plaintiff on March 6, 2003[,] as well as photographs including still frame photographs showing plaintiff's use of force claim and being escorted from J-2 until placed in J-115 cell.

recoverable from each officer's personnel file, and (2) a videotape of the altercation would reflect that the defendants used excessive force.

Additionally, McBride filed a motion requesting a copy of the transcript of his deposition, pursuant to Fed.R.Civ.P. 30(e), and objecting to the manner in which the deposition had been conducted, pursuant to Fed.R.Civ.P. 26(c)(5). McBride asserted that, (1) during his deposition, he objected to the presence of two CERT Team officers; and (2) the continued presence of these CERT officers caused him fear, intimidation, and embarrassment, to the extent that he could not concentrate on the deposition questions or make further objections. McBride also argued that, because the CERT team of officers had a history of using force, he feared that his further objecting to the officers' presence would result in him being placed in "lock down." McBride contended that, if these officers had not been present, he would have objected to (1) questioning as to his conviction, (2) defense counsel's repeated interruptions of his answers, and (3) the introduction of a photograph of McBride and a copy of a follow-up examination. Moreover, McBride argued that he was entitled to a copy of the deposition transcript so he could make any necessary "changes in form or substance."

The defendants then filed a combined motion for summary judgment and a supporting memorandum of law. The defendants argued that McBride's claims

against Defendant Rivers were not viable because (1) a § 1983 claim may not be based solely upon a theory of respondeat superior, and (2) McBride did not allege that Defendant Rivers either was personally involved, or had created any policies that had caused McBride's alleged constitutional violations. The defendants contended that the remaining defendants were entitled to summary judgment on McBride's claim of excessive force because any force (1) was de minimus, (2) caused only minimal injury, and (3) was taken in a good-faith effort to maintain a safe and orderly prison. The defendants also argued that they were entitled to summary judgment on McBride's claim of deliberate indifference because McBride had neither established an excessive risk to his health and safety, nor that he had suffered injuries as a result of being placed in a cell with Inmate Holmes.

In support of their motion for summary judgment, the defendants submitted McBride's deposition, in which McBride testified that, sometime around March 6, 2003, while Defendants Dumundo, Fox, Judkins, and Snipes were escorting him to the J-2 Building, Isolation/Segregation, for a disciplinary infraction, McBride stated "please don't put me in a cell with nobody that I may have problems with." When McBride saw that Inmate Holmes was in the cell to which McBride was being taken, he further informed these defendants that "me and that dude had

problems. I'm in fear for my life. Don't put me in the cell with him." The defendants, nevertheless, forcibly placed McBride in the cell with Inmate Holmes.

McBride further stated during his deposition that, immediately after he was placed in this cell, Inmate Holmes began walking towards McBride. McBride then pushed Inmate Holmes, thereby starting a fight between the two of them. Within seconds of this fight commencing, Defendants Demundo, Judkins, and Fox entered the cell and separated the inmates. In the process, the defendants used force against McBride, including kneeing him in the back of the head. The defendants then took Holmes to the medical office for treatment. McBride's injuries from this incident, that is, a scratch on the side of his face, a bruise on his right cheek, injury to his knee, and pain in his ribs, knees, and ankles, healed quickly, other than his knee injury. His knee injury, however, also might have been the result of "old age." Moreover, McBride conceded that he was suing Defendant Rivers because of his position as supervisor, rather than based on any personal acts.

After the magistrate notified McBride that his failure to respond to the defendants' motion for summary judgment could result in the magistrate entering a final judgment against him, McBride filed a motion to stay summary judgment pending the magistrate's consideration of his reply to the defendants' response to his motion to compel. McBride also responded to the defendants' summary

8

judgment motion, arguing that, although the defendants were justified in using some force in ending the altercation between himself and Inmate Holmes, the defendants' assault of him after he was restrained was excessive, intentionally conducted to inflict pain, and resulted in multiple injuries. Additionally, McBride contended that Defendant Rivers should not be granted summary judgment because (1) he ordered that McBride be placed in a cell with Inmate Holmes, despite (i) his knowledge of a substantial risk of danger, and (ii) Standard Operating Procedure (SOP) 11B09-0001, which McBride claimed instructed that "[c]ell occupancy, except in emergenc[ies], shall not exceed design capacity";[4] and (2) he failed to stop other officers from using excessive force.[5]

---

[4] In contrast, Officer Demundo stated in response to McBride's first interrogatories that the MSP segregation cells, which contain two beds, are designed for two prisoners.

[5] In support of his response opposing summary judgment, McBride attached (1) his own declaration, (Exh. A); (2) copies of internal grievance responses, denying his grievance but forwarding it to internal affairs, (Exhs. B, C); (3) a declaration by Isaiah Heard, another inmate, containing hearsay evidence on the amount of force used in the instant offense, (Exh. D); (4) Defendant Rivers's witness statement, in which he stated that he operated a camera when the use of force was used on McBride, (Exh. E); (5) McBride's witness statement, repeating the allegations he included in his civil complaint, (Exh. F); (6) McBride's medical report following the instant alleged acts, which confirmed that he suffered minor contusions and abrasions, (Exh. G); (7) an unidentified photograph, (Exh. H); (8) a declaration by Paul Tyner, another inmate at MSP, relating to past violence that had resulted from placing inmates with other unwanted cell-mates in segregation; and (9) a declaration by Sarah McBride, McBride's mother, which included that, while visiting McBride within days of the altercation, she observed that he had (i) a swollen face, (ii) a scratch on his right cheek, (iii) small holes on the inside of his left and right wrists, and (iv) knots behind his right ear and in the back of his head, (Exh. I).

Determining that he should have considered McBride's reply to the defendants' response to the motion to compel before ruling on McBride's motion to compel, the magistrate subsequently vacated his prior order denying this motion, granted McBride additional time to file his reply, and stayed consideration of the defendants' motion for summary judgment. Moreover, after McBride re-filed his reply, the defendants filed a "sur reply," to which they attached as an exhibit a copy of a letter they previously had sent to McBride, informing him that (1) his disciplinary report he had requested had been expunged from his record and, thus, no longer was available; and (2) the defendants had been unable to locate the photographs to which Defendant Rivers had referred in his witness statement.

The defendants also filed a reply brief in support of their motion for summary judgment, arguing that their responses to McBride's interrogatory questions revealed they did not use excessive force in responding to the prison altercation. The defendants alternatively contended that summary judgment was warranted as to McBride's claim of excessive force because the injuries that McBride identified during his deposition, that is, a scratch on his right cheek, a scrape on the back of his right forearm, a knot behind his right ear and on the back of his head, pain in his ribs and ankles, and problems with his right knee, either were insubstantial, temporary, or attributable to "getting old." Additionally, the

defendants contended that McBride had failed to show that they acted with a sufficiently culpable state of mind. McBride replied, arguing, among other things, that (1) his injuries were not minimal; and (2) a material issue existed as to whether the defendants' use of force, after they restrained him, was excessive and in violation of the defendants' policies and procedures.

On reconsideration of McBride's motion to compel, the magistrate again denied it, concluding that the defendants had adequately responded to McBride's discovery requests. The court also summarily stated that, to the extent McBride primarily was seeking the production of Request Nos. 2 and 4, these requests were "overly broad and burdensome and [would] not lead to the discovery of admissible evidence."

The magistrate also granted the defendants' motion for summary judgment and entered judgment in favor of the defendants as to all of McBride's claims. In doing so, the magistrate explained that, to the extent McBride was attempting to invoke liability against Defendant Rivers based on a theory of respondeat superior, McBride neither alleged a causal link between Defendant Rivers and a denial of his constitutional rights, nor that Defendant Rivers was responsible for a policy designed to deny McBride his constitutional rights. The magistrate discussed that, although the remaining defendants had a duty to protect McBride from violence at

11

the hands of other prisoners, McBride could not show that Inmate Holmes posed a substance risk to his safety by alleging only that they previously had a verbal altercation. The magistrate determined that summary judgment also was warranted on McBride's claim of excessive force because (1) his allegations did not support "a reliable inference of wantonness in the infliction of pain"; and (2) the injuries he suffered as a result of the defendants' use of force reflected that the defendants' use of force was de minimus.

**Issue 1:      Grant of Summary Judgment**

We review de novo a district court's grant of summary judgment. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (quoting Fed.R.Civ.P. 56(c)). When making this determination, we view all facts in the light most favorable to McBride, the non-moving party. See id.

**a.      Deliberate Indifference**

McBride argues that the district court erred in granting summary judgment on his claim of deliberate indifference because, accepting his allegations as true,

12

material issues of fact existed.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.[6]  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994).  Accordingly, "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" Id. at 833, 114 S.Ct. at 1976-77 (quotations and citations omitted).

"It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety."  Id. at 834, 114 S.Ct. at 1977.  "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.'"  Marsh v. Butler County, Ala., 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) (quoting Farmer, 511 U.S. at 844, 114 S.Ct. at 1982-83).  Thus, a claim based on deliberate indifference contains three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that

---

[6] The Eight Amendment's ban on cruel and unusual punishment is made applicable to the states by virtue of the Fourteenth Amendment.  See Carter v. Galloway, 352 F.3d 1346, 1347 n.1 (11th Cir. 2003) (citing Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)).

13

is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

In determining subjective knowledge, a court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." Carter, 352 F.3d at 1350. The defendant "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the [defendant] must also draw that inference." Id. at 1349 (quotation and marks omitted).

In Carter, an inmate asserted a claim of deliberate indifference after prison officials failed to protect him from an attack by his cell mate. See id. at 1348. In affirming the grant of summary judgment for the officials, we acknowledged that (1) the officials knew that the plaintiff's cell mate was a "problem inmate," who had a well-documented history of prison disobedience and violence; and (2) the plaintiff had notified the officials that his cell mate was acting crazy, including roaming his cell like a "caged animal." See id. at 1349. We, however, explained that, before a defendant's awareness rises to a sufficient level of culpability, there must be much more than mere awareness of an inmate's generally problematic nature. See id. Thus, we concluded that, although the defendants arguably should

have placed the plaintiff elsewhere, their "merely negligent failure to protect" him from the attack did not justify liability under § 1983. See id. at 1350.

In the instant case, in responding to the defendants' motion for summary judgment, McBride argued that the defendants knew of the risk of serious harm in placing him in the same cell as Inmate Holmes because, immediately before being placed in a cell with Inmate Holmes, he told them that he feared for his life. McBride, however, testified during his deposition that his only statements to the defendants relating to his safety included his general request that they not place him in a cell with anyone whom he might have problems, and his statement, upon seeing Inmate Holmes, that "me and that dude had problems. I'm in fear for my life. Don't put me in the cell with him." McBride did not identify a specific prior incident, from which the defendant could infer that a substantial risk existed. See Carter, 352 F.3d at 1349. Indeed, McBride conceded that, after he was placed in the cell, he started the altercation by pushing Inmate Holmes. Thus, similar to the facts in Carter, McBride failed to show that the defendants had subjective knowledge of a risk of serious harm. The court, therefore, did not err in granting the defendants summary judgment on McBride's claim of deliberate indifference. See McElligott, 182 F.3d at 1255; see also Carter, 352 F.3d at 1349-50.

   b.    **Excessive Force**

15

McBride also argues that the district court erred in granting the defendants summary judgment on his claim of excessive force because the defendants, in restraining him during the fight with Inmate Holmes, acted "maliciously and sadistically to cause harm." McBride contends that, even if some force was necessary to end the altercation, the defendants exceeded their authority by using force against him after the fighting stopped and he was restrained. Additionally, McBride contends that he produced evidence showing that he sustained more than de minimus injuries from this excessive force.

In addition to prohibiting 'deliberate indifference' to a substantial risk of serious harm to an inmate, the Eight Amendment's proscription of cruel and unusual punishment governs prison officials use of force against convicted inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). Under the Eighth Amendment, force is deemed legitimate in a custodial setting only as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992). Moreover, an officer who is present and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance. Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002).

16

Five factors relevant to ascertaining whether force was used "maliciously and sadistically" for the purpose of causing harm include (1) the extent of the injury, (2) the need for application of force, (3) the relationship between the need and the amount of force used, (4) any efforts made to temper the severity of a forceful response, and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Campbell, 169 F.3d at 1375.

Furthermore, we have explained that, "once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth Amendment, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation. " Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991). Indeed, "[o]nce restraints are initially justified, it becomes somewhat problematic as to how long they are necessary to meet the particular exigent circumstances." Id. at 1575. However, if force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended "to reduce the incidence of riots and other breaches of prison discipline." Id. at 1576.

17

Applying the Campbell factors in Skrtich, we affirmed the denial of a motion for summary judgment that correctional officers filed in response to a prisoner's claim of excessive force. See Skrtich, 280 F.3d at 1302. This claim arose out of the officers' use of an electronic shield to shock and incapacitate the prisoner, after the prisoner refused to be handcuffed during a search of his cell, and the officers' subsequent punching, kicking, and beating the prisoner to the extent he had to be airlifted from the prison to a hospital. See id. at 1299-1300. Conceding that some degree of force was lawful in light of his non-compliance with the officers' order to submit to handcuffing, the prisoner challenged as excessive the assault that occurred after he had been incapacitated by the shock of the electronic shield. See id. at 1301-02.

We determined in Skritch that, although the officer may have been justified in taking extra precautions in performing the cell extraction because of the prisoner's status as a "disciplinary problem," it was constitutionally impermissible for the officers to beat the prisoner after he had been shocked with the shield. See id. at 1302. Moreover, we concluded that, although a de minimus use of force does not support a claim of excessive force, the kinds of injuries the prisoner suffered, including rib fractures, back injuries, lacerations to the scalp, and abdominal

18

injuries that required nine days of hospitalization and months of rehabilitation, could not have been the result of de minimus use of force. See id.[7]

McBride conceded during his deposition that, immediately after the defendants placed him in the cell with Inmate Holmes, McBride started an altercation by pushing Inmate Holmes. McBride also conceded that the defendants immediate entering of the cell and separating the inmates was justified as a measure to restore safety within the prison. Thus, the only force at issue here involves McBride's allegation that, after the officers secured and handcuffed him, they (1) repeatedly punched him in the back of his head, on his back, and on his left side; and (2) kneed him four to six times on the left side of his face.

Accepting these allegations as true, Defendants Fox, Demundo, Judkins, and Snipes, who were responsible for protecting the safety of both McBride and Inmate Holmes, knew that they were escorting McBride to the segregation unit due to a separate disciplinary infraction. McBride did not allege that, in applying force, the officers used language that was threatening or abusive. See Bozeman v. Orum, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005) (explaining that, although words, alone, are not determinative of bad faith on the part of officers in their use of force,

_____

[7] We note that the absence of serious injury alone is insufficient to dismiss a plaintiff's Eighth Amendment claim; only de minimus uses of force are beyond constitutional recognition. See Hudson, 503 U.S. at 4-8, 112 S.Ct. at 997-99.

19

"threatening language as part of the totality of the circumstances can be relevant to what is constitutionally reasonable," or in the determination of reasonable inferences about the officers' subjective state of mind). Moreover, unlike the prisoner in Skritch, McBride was not stunned during the altercation. Cf. Skrtich, 280 F.3d at 1302. McBride also agreed that his injuries from this force were not permanent, other than his knee injury, and that his continuing knee injury, instead, might have been the result of "old age."

Thus, although the defendants in the instant case arguably could have used less force after restraining McBride, McBride failed to produce evidence showing that these measure were taken "maliciously and sadistically for the very purpose of causing harm." See also Hudson, 503 U.S. at 6, 112 S.Ct. at 998; see also Campbell, 169 F.3d at 1374 (explaining that "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary"). Furthermore, to the extent that Defendant Rivers was present during the alleged use of force and failed to intervene, no constitutional violation occurred because the other officers did not use excessive force. See Skrtich, 280 F.3d at 1301. The district court, therefore, also did not err in concluding that no genuine issue existed on whether the defendants used excessive force in violation of the Eighth Amendment.

c.    **Defendant Rivers' Liability**

McBride argues, as well, that the court should not have granted Defendant Rivers summary judgment on McBride's claim of deliberate indifference because, based on his eight years of employment at MSP and McBride's statement that he feared being placed in the same cell as Inmate Holmes, Defendant Rivers should have been aware of the substantial risk of his ordering McBride to be placed in the same cell with Inmate Holmes. McBride contends that Defendant Rivers should not have been granted summary judgment on McBride's claim of excessive force because he should have exercised his supervisory duties by intervening. Additionally, McBride argues that the court erred in concluding that Defendant Rivers could not be held liable under a theory of respondeat superior because he (1) was aware of the "widespread abuses" that previously had occurred in the segregation unit, and (2) had ignored a standard operating procedure by ordering that McBride be placed in a cell with another inmate, and (3) had caused a violation of McBride's civil rights.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Supervisory liability under § 1983 occurs only when "the supervisor personally participates in the alleged unconstitutional conduct or when

21

there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Id. A causal connection may be established only when (1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. Id. (internal marks, quotations, and citations omitted).

As discussed above, the district court did not err in concluding that no genuine issue of material fact existed as to whether Defendants Fox, Demundo, Judkins, and Snipes violated McBride's Eighth Amendment rights either by failing to take reasonable measures to guarantee his safety, or in using excessive force in restraining him. However, even if we were to conclude that a constitutional violation occurred, the district court did not err in determining that Defendant Rivers was not liable in his supervisory capacity for the acts of the other prison employees. Although McBride generally argues on appeal that Defendant Rivers should have been liable because he "was well aware of the history of widespread abuses" in the MSP segregation wing, McBride did not identify in his response to

22

the motion for summary judgment any evidence showing a "history of widespread violence." See Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (explaining that plaintiff must show that the past abuses were "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences").

To the extent McBride is arguing that Defendant Rivers was liable because, in ordering the other defendants to place McBride in a segregation cell with another inmate, he violated SOP IIB09-0001, he asserted that this policy only states that "[c]ell occupancy, except in emergency, shall not exceed design capacity." Although McBride has interpreted this policy as limiting occupancy in segregation cells to one prisoner, he has not cited to evidence in support of this argument. To the contrary, Officer Demundo stated in his response to Demundo's First Interrogatories that the MSP segregation cells, which contain two beds, are designed for two prisoners.

Additionally, any orders Defendant Rivers gave for the other defendants to place McBride in a cell with Inmate Holmes did not constitute deliberate indifference because McBride's general statement that he feared being placed in this cell was insufficient to show that Defendant Rivers had a subjective knowledge of a risk of serious harm. See McElligott, 182 F.3d at 1255. Finally, as discussed above, to the extent that Defendant Rivers was present during the alleged

23

use of force and failed to intervene, no constitutional violation occurred because the other officers did not use excessive force. See Skrtich, 280 F.3d at 1301. Thus, the district court did not err in determining that Defendant Rivers was not liable in his supervisory capacity.

**Issue 2:      McBride's Discovery Motions**

In addition to challenging the district court's grant of summary judgment, McBride argues that the court abused its discretion in denying his motion to compel because the evidence he was seeking, that is, a videotape of the incident at issue, other complaints or grievances relating to the defendants' excessive use of force, and the logbook for the J-Building, was relevant and its production would not have been unduly burdensome. McBride also contends that the district court erred in granting summary judgment without ruling on McBride's objection to his deposition, and in not excluding this deposition, when (1) guards were present during the deposition, and (2) the defendants failed to produce a copy of a transcript of the deposition for McBride's review.

District courts are entitled to broad discretion in managing pretrial discovery matters. Klay v. All Defendants, 425 F.3d 977, 982 (11th Cir. 2005). Thus, we review a district court's discovery rulings, including the denial of a motion to compel, only for abuse of discretion. Hinson v. Clinch County, Ga. Bd. of Educ.,

24

231 F.3d 821, 826 (11th Cir. 2000). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1309 (11th Cir. 2001). We also "will not overturn discovery rulings unless it is shown that the [d]istrict [c]ourt's ruling resulted in substantial harm to the appellant's case." Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (internal quotations omitted).

Additionally, although courts "do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education," this leniency "does not give a court license to serve as de facto counsel for a party." GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted). Once a pro se litigant is in court, "he is subject to the relevant laws and rules of the court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

To the extent the district court denied McBride's motion to compel discovery in response to his Request Nos. 2 and 4, "[t]he scope of allowable discovery is determined by the claims (and defenses) raised in the case."

25

Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 n.37 (11th Cir. 1997).

Under Fed.R.Civ.P. 26:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1).

In denying McBride's motion to compel the defendants to produce, among other things, (1) a videotape of the altercation, and (2) evidence relating to any other complaints filed within the past two years alleging that the defendants had used excessive force, the magistrate explained that either the defendants had adequately responded to McBride's discovery requests, or McBride's requests were "overly broad and burdensome and [would] not lead to the discovery of admissible evidence." Indeed, McBride failed to offer evidence rebutting the defendants' argument that they had informed McBride that they had been unable to locate the photographs or videotape to which Defendant Rivers referred in his witness statement.

The defendants also argued in response to McBride's motion to compel that, due to the manner in which the defendants compiled and stored records, it would be unduly burdensome, if not impossible, to obtain a list of grievances and complaints filed against each individual defendants by other inmates. See Wright v. AmSouth Bancorporation, 320 F.3d 1198, 1205 (11th Cir. 2003) (concluding that the district court did not abuse its discretion in denying plaintiff's request for the court to compel the production of copies of all word-processing files created or accessed by five of the defendant's employees over a two-and-a-half year period when the plaintiff neither identified particular items within his expansive request, nor provided a theory of relevance that narrowed the scope of his request). Additionally, other than generally arguing that this evidence would have established the defendant's subjective intent, McBride failed to explain how he was "substantially harmed" by the court's refusal to compel the production of this evidence. See Iraola, 325 F.3d at 1286. Thus, the district court did not abuse its discretion in denying McBride's motion to compel. See Hinson, 231 F.3d at 826.

To the extent McBride is challenging on appeal the district court's failure to rule on his motion to exclude his deposition testimony, prior to granting the defendants' motion for summary judgment, "[f]ailure to consider and rule on significant pretrial motions before issuing dispositive orders can be an abuse of

27

discretion." Chudasama, 123 F.3d at 1367. Depositions, however, are generally admissible provided that the party against whom they are admitted was present, represented, or reasonably noticed, pursuant to Fed.R.Civ.P. 32(a). Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d 738, 751 (11th Cir. 2002). Moreover, depositions are specifically allowed in consideration of summary judgment, pursuant to Fed.R.Civ.P. 56(c). Id.

As discussed above, citing to Rule 26(c)(5), McBride argues that the court should have excluded his deposition testimony because the CERT officers were present while the deposition was being conducted. However, if a party objects to opposing counsel's manner of conducting discovery, including depositions, the proper remedy is to seek a protective order. Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1325 (11th Cir. 2002). Indeed, Rule 26(c) specifically provides that a party may file a motion for a protective order:

> to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that discovery be conducted with no one present except persons designated by the court.

Fed.R.Civ.P. 26(c)(5).

Here, McBride never moved for a protective order asking for this relief. Moreover, other than generally stating that, if these officers had not been present, he would have objected to (1) questioning as to his conviction, (2) defense

28

counsel's repeated interruptions of his answers, and (3) the introduction of a photograph of McBride and a copy of a follow-up examination, McBride failed to explain why his case was substantially harmed by the officer's presence. See Iraola, 325 F.3d at 1286. Indeed, McBride conceded during the deposition that the CERT officers did not work at the prison at issue when McBride was present.

Furthermore, to the extent McBride moved to exclude his deposition testimony because he was not provided with a copy to review, and he cited to Rule 30(e), this rule provides:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.

Fed.R.Civ.P. 30(e). McBride's deposition, however, does not reflect that, prior to the completion of the deposition, he requested to review it. Moreover, McBride has failed to explain why his case was substantially harmed by the denial of an opportunity for him to review this testimony. See Iraola, 325 F.3d at 1286. Thus, the court did not abuse its discretion in failing to rule on McBride's motion to exclude his deposition testimony, or in relying on this testimony in granting summary judgment. See Hinson, 231 F.3d at, 826; Chudasama, 123 F.3d at 1367.

Accordingly, we conclude that the district court did not err in finding that no material issues of fact existed as to whether the defendants either failed to protect McBride, or used excessive force in restraining him. The court did not err in concluding that Defendant Rivers could not held liable under a theory of respondeat superior. Furthermore, the court did not abuse its discretion either in denying McBride's motion to compel the production of additional evidence, or in failing to rule on McBride's motion to exclude his deposition testimony before granting the defendants summary judgment. We, therefore, affirm.

**AFFIRMED.**